UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT DIXON,

    *Plaintiff*,

v.

ANTHONY BLINKEN *in his official capacity as* SECRETARY OF THE DEPARTMENT OF STATE,

    *Defendant.*

Civil Action No. 22-2357 (RDM)

**MEMORANDUM OPINION AND ORDER**

Plaintiff Robert Dixon is a Human Resources Specialist in the Department of State's Executive Office for the Bureaus of Administration and Administration Resources Management. Dkt. 21 at 1 (Second Am. Compl. ("SAC") ¶ 2). He brings this lawsuit against his employer, the Department of State (the "Department"), asserting sex discrimination and retaliation claims in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. Id.* (SAC ¶ 1). The Department moves to dismiss Dixon's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Dkt. 22-1 at 1. For the reasons that follow, the Court will **GRANT** in part and **DENY** in part the Department's motion.

**I. BACKGROUND**

The Court accepts Dixon's factual allegations as true for purposes of evaluating the Department's motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Dixon alleges that he "identifies as male" and that he was employed as a "GS-0201-12 Human Resources Specialist" at the Department. Dkt. 21 at 3 (SAC ¶¶ 20–22). As part of his employment terms, Dixon "worked an approved telework schedule that allowed him to telework

on Mondays." *Id.* at 4 (SAC ¶ 24). Dixon's coworker, Christine Rice, was similarly approved to telework on Mondays. *Id.* (SAC ¶ 28). Dixon alleges that Rice "identifies as female," "performed the same or similar duties" as Dixon, and had "the same first-level supervisor." *Id.* (SAC ¶¶ 25–27).

Around January 9, 2018, Dixon realized that his next telework Monday was set to fall on a federal holiday, Martin Luther King, Jr. Day. *Id.* (SAC ¶ 29). Dixon accordingly requested to change his approved telework day the following Monday to another day of the week, so that he could still work one day from home. *Id.* His first- and second-line supervisors denied the request. *Id.* (SAC ¶¶ 30–31). Dixon alleges, however, that Rice—who also teleworked on Mondays—"was permitted to switch her telework day when it fell on a federal holiday." *Id.* (SAC ¶¶ 32, 35). He further alleges that, in February 2018, he contacted an Equal Employment Opportunity ("EEO") counselor "regarding [this] discrimination," *id.* at 2 (SAC ¶ 9), and subsequently filed a formal EEO complaint, *id.* (SAC ¶ 10). That administrative proceeding remained pending into 2022. *Id.* at 3 (SAC ¶ 14).

One year after the telework incident, while Dixon's EEO proceedings were ongoing, he applied for one of four vacancies for a GS-13 Human Resources Specialist position. *Id.* at 4–5 (SAC ¶¶ 36–37). Although he interviewed for the position, *id.* at 5 (SAC ¶ 37), Dixon learned on February 26, 2019, that he was not selected, *id.* (SAC ¶ 38). The four vacancies all went to female candidates. *Id.* (SAC ¶ 39). Dixon alleges that "his non-selection occurred because of his gender." *Id.* (SAC ¶ 41). According to the complaint, Dixon "believe[d]" he was "better qualified" for the position because of "knowledge, skills, and abilities" as well as "his years of experience with the Agency." *Id.* (SAC ¶ 40). At the time Dixon was not selected, his

"performance evaluations" showed that he was "far above the standards set" for the position. *Id.* (SAC ¶ 47).

Dixon also alleges that "the non-selection occurred because of his prior EEO activity, which was ongoing at the same time as his non-selection." *Id.* (SAC ¶ 42). In particular, Dixon alleges that two of the three individuals on the selection panel were his first- and second-level supervisors. *Id.* (SAC ¶ 43). These individuals were "named as responsible management officials in Plaintiff's original EEO complaint in February 2018," and, accordingly, were "aware" of Dixon's prior EEO activity and the related proceedings. *Id.* (SAC ¶¶ 44–45).

Dixon filed a second EEO complaint on March 23, 2019, "within the forty-five day statutory deadline," *id.* at 3 (SAC ¶ 15), and the administrative judge dismissed the complaint on February 17, 2022, *id.* (SAC ¶ 17). Dixon filed his second complaint before this Court on October 11, 2022. *Id.* (SAC ¶ 18).

The Court consolidated Dixon's complaints, *see* Min. Order (May 16, 2023), and Dixon filed a second amended complaint on June 15, 2023, Dkt. 21. Before the Court is the Department's motion to dismiss, Dkt. 22, Dixon's opposition, Dkt. 23, and the Department's reply, Dkt. 25.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the allegations contained in the complaint. To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although "detailed factual allegations" are not necessary to withstand a

Rule 12(b)(6) motion to dismiss, a plaintiff must furnish more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.*

Nonetheless, when evaluating a Rule 12(b)(6) motion, the court "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quotation marks omitted).

### III.  ANALYSIS

**A.    Discrimination Claims**

    1.    *Telework*

Dixon's first claim of sex discrimination arises from his supervisors' denial of his request to switch his telework day when it fell on a national holiday.  "To state a prima facie case of discrimination, a plaintiff must allege []he is part of a protected class under Title VII, []he suffered a cognizable adverse employment action, and the action gives rise to an inference of discrimination."  *Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015); *see* 42 U.S.C. § 2000e–16(a).  The Department argues that the denial of this request does not constitute an "adverse employment action" and that Dixon's allegations do not give rise to an inference of discrimination.  *See* Dkt. 22-1 at 4, 7.  The Court will address each argument in turn.

        a.    <u>Adverse Employment Action</u>

In *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024), the Supreme Court recently clarified the adverse action standard under Title VII.  The Court held that plaintiffs alleging discrimination under Title VII need not show that "the harm incurred was 'significant[]' . . . serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar."  *Muldrow*, 144 S. Ct. at 974.  "To make out a Title VII

discrimination claim," the Court explained, "a [plaintiff] must show *some harm* respecting an identifiable term or condition of employment." *Id.* (emphasis added).  *Muldrow* is consistent with the D.C. Circuit's decision in *Chambers v. District of Columbia*, 35 F.4th 870, 880 (D.C. Cir. 2022) (en banc), which held that an "adverse employment action" need not cause an "objectively tangible harm."  Rather, the statutory text requires only "discrimination" with respect to an employee's "terms, conditions, or privileges of employment"—no more and no less.  *Id.* at 874–75 (quoting 42 U.S.C. § 2000e–2(a)(1)).[1]  This standard is "capacious" and "evince[s] a[ ] [congressional] intent to strike at the entire spectrum of disparate treatment . . . in employment," *id.* at 874 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (internal quotation marks omitted)).

The Department argues that Dixon fails to state a claim under Title VII because, even under *Muldrow* and *Chambers*, the Department's denial of Dixon's request to change his telework day on one occasion does not rise to the level of an adverse employment action.  *See* Dkt. 22-1 at 7.  The Department claims that this "isolated instance" is a "textbook example of a *de minimis* violation."  *Id.*  In other words, on the Department's view, Dixon failed to allege even "some harm."  *See id.*; *Muldrow*, 144 S. Ct. at 974.

---

[1] The Department argues that the federal and private-sector provisions of Title VII should not be construed alike, and so the "adverse action" standard is different for federal employees. Dkt. 22-1 at 6–7.  But "*Chambers* did not so much as hint that the private-sector and federal-sector discrimination provisions should no longer be construed alike," and the opinion overruled *Brown v. Brody*, 199 F.3d 466 (D.C. Cir. 1999), which itself involved a federal-employee plaintiff.  *Bain v. Office of Att'y Gen.*, 648 F. Supp. 3d 19, 54 (D.D.C. 2022).  Moreover, the D.C. Circuit recently reaffirmed that "[w]e have always interpreted Title VII and the ADEA identically as far as adverse actions go, and we have likewise always treated the private-sector and federal-sector provisions of those statutes alike in that respect."  *Van Horn v. Del Toro*, 2024 WL 3083365, at *3 (D.C. Cir. June 21, 2024).  Accordingly, and for the reasons discussed in greater detail in *Bain*, 648 F. Supp. 3d at 53–55, this Court will continue to apply *Chambers* to the federal-sector provisions of Title VII.

The Court disagrees.  Dixon's "approved telework schedule" was plainly a term, condition, or privilege of his position.  Dkt. 21 at 4 (SAC ¶ 24).  Several decisions from this Court, moreover, establish that denial or revocation of a telework schedule constitutes an adverse change to the "terms, conditions, or privileges of employment."  *Black v. Guzman*, 2023 WL 3055427, at *8 (D.D.C. Apr. 24, 2023) (quoting *Chambers*, 35 F.4th at 876); *accord Mitchell v. Garland*, 2024 WL 3251217, at *4 (D.D.C. July 1, 2024) (holding that changes to plaintiff's permitted telework hours constituted an adverse employment action); *Moore-Davis v. U.S. Dep't of the Navy*, 694 F. Supp. 3d 116, 124 (D.D.C. 2023) (holding that denial of telework constituted an adverse employment action).  Although the denial of Dixon's request to change his telework day on only one occasion might not constitute a "significant" harm—or a "serious" or "substantial" harm—it did result in "some harm."  *Muldrow*, 144 S. Ct. at 974.  As the D.C. Circuit explained in *Chambers*, Title VII prohibits discrimination in the distribution of even seemingly trivial benefits.  35 F.4th at 878–79 (noting that providing doughnuts exclusively to white employees would qualify as an adverse action against non-white employees).  Dixon's supervisors denied him the convenience of working from home, a decision that affected "nothing less than the . . . where . . . of [his] [ ] work" on that one day.  *Muldrow*, 144 S. Ct. at 974.  The denial of that benefit—even one time—accordingly constitutes "some harm."  *Id.*

The Department contends that, notwithstanding *Muldrow*, "*de minimis* harm" is not actionable under Title VII.  *See* Dkt. 22-1 at 5; *see also Chambers*, 35 F.4th at 875 (declining to "decide [] whether Title VII includes a de minimis exception").  To be sure, the Court in *Muldrow* explained that "[t]he words 'discriminate against,' . . . refer to 'differences in treatment that *injure.*'"  144 S. Ct. at 974 (quoting *Bostock v. Clayton County*, 590 U.S. 644, 681 (2020)) (emphasis added).  A plaintiff in a Title VII case must experience "'worse' treatment" "because

6

of sex or other protected trait." *Id.* (quoting Bostock, 590 U.S. at 658). But as the Supreme Court further explained, nothing in Title VII "says anything about how much worse" or otherwise distinguishes between "significant disadvantages and . . . not-so-significant ones." *Id.* Here, Dixon alleges that he was treated "worse" than his female coworker: she was allowed to adjust her schedule, while he was not. That is all Title VII requires to state a claim.

        b.        <u>Inference of Discrimination</u>

Although Dixon has thus alleged an adverse action, that is not enough to state a claim. Dixon must also plead facts sufficient to support "an inference of discrimination," *Walker*, 798 F.3d at 1091—that is, his employer "acted for discriminatory reasons—'because of' sex or race or other protected trait," *Muldrow*, 144 S. Ct. at 976 (quoting § 2000e–2(a)(1)).

A plaintiff can establish an inference of discrimination by providing "direct evidence of . . . animus" or by comparison to a similarly situated employee. *Yuvienco v. Vilsack*, 2024 WL 727712, at *3 (D.D.C. Feb. 22, 2024). Where a plaintiff asks the Court to infer discrimination by comparing his treatment to that of a similarly situated employee, the plaintiff "must also demonstrate that all of the relevant aspects of his employment situation were nearly identical to those of the other employee." *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (internal quotations and alterations omitted). The relevant aspects to consider "include the similarity of the plaintiff's and the putative comparator's jobs and job duties" and "whether they were disciplined by the same supervisor." *Id.*

Dixon has sufficiently alleged that his female coworker, Christine Rice, was similarly situated. Rice "performed the same or similar duties as Plaintiff" and had "the same first-level supervisor." Dkt. 21 at 4 (SAC ¶¶ 26–27). Like Dixon, Rice also teleworked on Mondays. *Id.*

7

(SAC ¶ 28). Although Dixon's request to change his telework day was denied, Rice "was permitted to switch her telework day when it fell on a federal holiday." *Id.* (SAC ¶ 32).

The Department argues that Rice cannot serve as a similarly situated comparator because her request might not have been for the "same holiday." Dkt. 22-1 at 7. At least at this early stage of the proceeding, that contention is unpersuasive. Although a comparator-employees' situation must be "*nearly* identical" to the plaintiff's, it need not be *exactly* identical. *Burley*, 801 F. 3d at 301 (emphasis added); *see also Dodson v. United States Capitol Police*, 2019 WL 4860720, at *3 (D.D.C. Sept. 30, 2019) (employee could be an apt comparator to plaintiff even where they were not subject to "identical" last chance agreements (emphasis omitted)). Taking Dixon's allegations as true, he and Rice "performed the same or similar duties" and reported to the "same [] supervisor." Dkt. 21 at 4 (SAC ¶¶ 26–27). Even if Rice made her request for a different holiday, the Department fails to explain why any such difference would be material. The Department might, of course, develop this argument at summary judgment. But at this early stage of the proceeding, Plaintiff's allegations suffice to establish a plausible inference of discrimination. The Court will deny the Department's motion to dismiss Dixon's telework claim.

    2.    *Non-selection*

Dixon's second sex discrimination claim arises from his non-selection for a GS-13 Human Resources Specialist position. Dkt. 21 at 5 (SAC ¶¶ 41–42). As with Dixon's first sex discrimination claim, he must plead that he is "part of a protected class under Title VII, []he suffered a cognizable adverse employment action, and the action gives rise to an inference of discrimination." *Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015).

The Department does not dispute that non-selection qualifies as an "adverse action," *see* Dkt. 22-1 at 8–9, but, instead, argues that Dixon's allegations do not give rise to "an inference of discrimination," *see id.* at 9–10. The Department maintains that, in order to create an inference of discrimination, Dixon must allege that he was "*significantly* better qualified for the job" than the eventual selectees. *Id.* at 8 (quoting *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006)). *Holcomb* is only partially instructive here, as that case was decided on a motion for summary judgment, *see Holcomb*, 433 F.3d at 893, and to state a claim, "an employment discrimination plaintiff is not required to plead every fact necessary to establish a *prima facie* case," *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011); Dkt. 23-1 at 6.

To establish an inference of discrimination in a non-selection case, "[a]t the motion to dismiss stage, a plaintiff need not 'rule out every possible lawful explanation,'" for the non-selection. *Ho v. Garland*, 106 F.4th 47, 54 (D.C. Cir. 2024) (quoting *Wilson v. Ark. Dep't of Hum. Servs.*, 850 F.3d 368, 373 (8th Cir. 2017). But a plaintiff may create an inference by, for example, "dispel[ling] any 'obvious alternative explanation[s].'" *Id.* at 53–54. A plaintiff may dispel alternative explanations by pleading "facts suggesting that he was well-qualified for the position." *Id.* (denying motion to dismiss where plaintiff alleged that "Human Resources told [plaintiff] he was 'among the best qualified for the position,'" and a member of the hiring committee told plaintiff he had "'knocked it out of the park' on some interview questions"). Or a plaintiff may plead that he was well-qualified, but passed over in favor of a candidate who "did not meet the . . . job requirements." *Thomas v. Wash. Metro. Area Transit Auth.*, 305 F. Supp. 3d 77, 86 (D.D.C. 2018).

The Court agrees with the Department that Dixon has not met even this low bar. He alleges that he "believe[d]" he was "better qualified" than "some or all of the selectees based on

9

his knowledge, skills, and abilities because of his years of experience with the Agency." Dkt. 21 at 5 (SAC ¶ 40).  But his conclusory self-assessment is not supported by any *factual* allegations supporting that belief:  he does not indicate what his qualifications were or what qualifications were required for the position, aside from the fact that he occupied a GS-12 position, and the position he sought was a GS-13.  Dkt. 21 at 3, 5 (SAC ¶¶ 20–21, 38, 41–42).  Nor does Dixon plead any *facts* regarding the relative qualifications of the selectees, such as their position levels, abilities, or years of experience compared to Dixon.  *See Thomas*, 305 F. Supp. 3d at 86.  He alleges only that "his performance evaluations will show that his performance was far above the standards set."  Dkt. 21 at 5 (SAC ¶ 47).  But absent any factual allegations regarding Dixon's qualification and the qualifications of the selectees, Dixon's conclusory belief "cannot by [itself] give rise to an inference of discrimination."  *Keith v. U.S. Gov't Accountability Off.*, 2022 WL 3715776, at *4 (D.D.C. Aug. 29, 2022); Dkt. 22-1 at 9 (SAC ¶ 41).

As a result, as currently pled, Dixon's complaint fails because it does not "dispel any 'obvious alternative explanation[s]'" for his non-selection.  *Ho*, 106 F.4th at 54.  Because the complaint establishes no "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678, Dixon's claim for sex discrimination based on his non-selection will be dismissed without prejudice.

**B.    Retaliation Claim**

Finally, Dixon alleges that he was not selected for the GS-13 Human Resources Specialist position in February 2019 in retaliation for filing a sex discrimination complaint regarding the telework incident.  Dixon alleges that two of the three members of the selection panel for this position were his "first-level supervisor and his second-level supervisor," both of

whom "were named as responsible management officials" in Dixon's EEO complaint from February 2018.  Dkt. 21 at 5 (SAC ¶¶ 43–44).

To state a claim for retaliation, Dixon must allege: (1) that he was engaged in a statutorily protected activity, (2) that he suffered a materially adverse action from their employer, and (3) that there is a causal connection between the two.  *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007).  The Department does not contest the first two elements—that Dixon engaged in a statutorily protected activity by filing a discrimination complaint, and that his non-selection qualifies as an adverse action, Dkt. 22-1 at 8–10—but argues that Dixon does not sufficiently allege "any connection" between the two, *id.* at 10.

On the Department's telling, causation is lacking as to one of the three members on the selection panel because that member was not "aware of [Dixon's EEO] activity."  Dkt. 22-1 at 10 (citing Dkt. 21 at 5 (SAC ¶¶ 44–45)).  The Court agrees that this member of the committee could not have retaliated against Dixon to the extent the member did not have "knowledge of [Dixon's] protected activity, which is a requirement for any retaliation claim."  *Ho*, 106 F.4th at 53 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam)).

As for the other two panel members—who were named in Dixon's complaint—the Department points to the one-year gap (or, more accurately nine-and-a-half month gap) between Dixon's formal EEO complaint and his non-selection to show that the two are unconnected.  Dkt. 22-1 at 10.  In order to "plead causation" between a protected activity and an adverse action, "the temporal connection" between the two "must be 'close.'"  *Ho*, 106 F.4th at 52 (quoting *Singletary v. District of Columbia*, 351 F.3d 519, 525 (D.C. Cir. 2003)).  Although there is no "bright-line" rule for how long is too long, this gap would, "on its own," likely be "too long to

11

support an inference of causation." *Id.* (holding that 10-month gap, standing alone, would not be sufficient to create an inference of causation).

"But [the Court] must read 'the allegations of the complaint as a whole.'" *Ho*, 106 F.4th at 54 (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 47 (2011)). "From that broader perspective, and construing the allegations in [Dixon's] favor," *id.*, the Court concludes that (although it is a very close question) Dixon's allegations (barely) give rise to an inference of causation (at least at this early stage of the proceeding). Not only were the EEO proceedings ongoing at the time of his non-selection, but two of the three members of the panel were named in Dixon's complaint. Dkt. 21 at 5 (SAC ¶¶ 42, 44); *see Ho*, 106 F.4th at 53 ("[I]t is reasonable to infer that a supervisor is more likely to retaliate against an employee that they know has previously complained about their own behavior . . . ."). The Court will, accordingly, deny the Department's motion to dismiss this claim, but cautions Plaintiff that he will need to offer far more than this to survive a motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Department's motion to dismiss, Dkt. 22, is hereby **GRANTED** as to Dixon's discriminatory non-selection claim and **DENIED** as to his telework claim and retaliatory non-selection claim.

**SO ORDERED**.

/s/ Randolph D. Moss  
RANDOLPH D. MOSS  
United States District Judge

Date: September 11, 2024